IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:22-CV-00099 JMB |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT SCHULTE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Memorandum in Opposition
to Defendants' Motion to Continue Sealing of the Second Amended Complaint**

The unredacted version of the Second Amended Complaint (ECF No. 52) should be unsealed. Nothing in the four redacted paragraphs would endanger law enforcement or compromise its operations in any way. Law-enforcement privilege is inapplicable, nothing in state law prevents disclosure, and the protective order covering certain documents exchanged in discovery does not justify sealing a judicial record. *See, e.g.*, L.R. 13.05(A)(3); *Littlefield v. Am. Alternative Ins. Corp.*, No. 4:21-CV-00304 SEP, 2022 WL 4355201, at *3 (E.D. Mo. Sept. 20, 2022) ("The fact that information was disclosed pursuant to the parties' protective order is not, on its own, a sufficient legal justification for sealing.").

Under the circumstances here, where the information—which pertains only to Plaintiff and is of a type routinely disclosed in court—is essential to support § 1983 claims against a public entity like Defendant St. Louis County, the public has a particularly strong interest in access. *See United States v. Gray*, --- F.4th ---, No. 22-1031, 2023 WL 1428587, at *3 (8th Cir. Feb. 1, 2023) (recognizing the common-law right of public access, which allows "the public to have confidence in the administration of justice"; commenting that the need of access "is particularly acute when a proceeding involves the deprivation of a person's liberty"; and

unsealing appellate briefs concerning a civil-commitment proceeding); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir. 2021) (reiterating that "allowing the public to keep a watchful eye on the workings of public agencies" is an interest served by the common-law right of access). The common-law and First Amendment rights of access, as well as the Court's local rule, require unsealing.

> **I. The unredacted Second Amended Complaint must be unsealed in accordance with the common-law right of public access to judicial records.**

As Defendants[1] acknowledge, there is a common-law right of access to judicial records that was articulated in *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 598 (1978). When applying the common-law test to court-filed documents, courts often describe it as having two prongs. The first prong asks whether the document to which access is sought is a "judicial record." If so, the second prong asks a court to balance potential interference with the common-law right of access to that record with "the salutary interests served by maintaining confidentiality of the information sought to be sealed." *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir. 2021) (quoting *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013)); *see Scott v. City of Sioux City*, 96 F. Supp. 3d 898, 908 (N.D. Iowa 2015) (articulating two-prong test).

As a court-filed document that plays a critical role in the adjudicatory process, the Second Amended Complaint is a judicial record. *See Scott*, 96 F. Supp. 3d at 908–09 (concluding that a record that plays a role in the adjudicatory process is a judicial record for purposes of the common-law right of access); *cf. Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, 534 F. Supp. 3d

---

[1] The motion to continue sealing was submitted by both Defendants, but there is no explanation for Defendant Schulte's interest in continued sealing. Officer Schulte discussed Plaintiff's criminal-history records with Plaintiff during the traffic stop. (*See* 2d Am. Compl. ¶ 26.)

1038, 1041 (D. Minn. 2021) (collecting cases, analyzing *IDT Corp.*, and holding that within the Eighth Circuit everything filed in court is a "judicial record," but different records may enjoy stronger or weaker presumptions of public access depending on their role within the proceeding).

As Defendants recognize, "only the most compelling reasons can justify non-disclosure of judicial records." *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005); *accord Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (holding that the presumption of public access can be overcome only by "compelling reasons").[2] Defendants' proffered reasons for sealing are mere generalities, like the fact that the information is "usually restricted to law enforcement use." (ECF No. 64 at 1.) All sorts of information filed in court is initially used only by certain

---

[2] Plaintiff believes the First Amendment, separately, requires unsealing. *See Courthouse News Service v. Gilmer*, 48 F.4th 908, 911 (8th Cir. 2022) (reinstating media company's First Amendment claim against clerks who did not provide same-day public access to newly filed complaints).

    The Eighth Circuit has not reached a final decision on whether there is a First Amendment right of public access to judicial records in civil proceedings, but at least nine circuits have concluded there is. *See, e.g., Doe v. Mass. Institute of Tech.*, 46 F.4th 61, 67 (1st Cir. 2022); *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2011); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984)); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177–79 (6th Cir. 1983); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) and *Bond v. Uteras*, 585 F.3d 1061, 1073 (7th Cir. 2009); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) and 614 Fed. App'x *912, *914 (9th Cir. 2015) (memorandum opinion); *Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1264 (10th Cir. 2022); *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001).

    No circuit court has concluded otherwise. *See In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983) (commenting that "the presence of the public and press at civil proceedings will enhance and safeguard the quality of the fact-finding process, just as it does at criminal trials. Arguably, the public interest in securing the integrity of the fact-finding process is greater in the criminal context than the civil context, since the condemnation of the state is involved in the former but not the latter, but it is nonetheless true that the public has a great interest in the fairness of civil proceedings."); *United States v. Thompson*, 713 F.3d 388, 399–400, 399 n.5 (8th Cir. 2013) (Gruender, J., concurring) (recognizing "the judiciary's trend toward recognizing a broad First Amendment right of access applicable to civil proceedings" and noting that "restrict[ing] the First Amendment right of access to criminal proceedings" would contradict *Freedom of Info. Council*, which had extended that right to contempt hearings). The Eighth Circuit recently noted that "there is reason to believe that the First Amendment may require access to court-filed documents," though it did not determine whether that access had to be "lightning fast." *Courthouse News Service v. Gilmer*, 48 F.4th at 911 n.1.

    Unlike the common-law right of access, which is subject to a balance-of-interests test, the First Amendment right of access springs from a test grounded in historical considerations. Once it attaches, an overriding interest "essential to preserve higher values" is required to overcome it. *Press-Enter.*, 478 U.S. at 9. Because there are historical traditions of access to complaints against public entities and to documents filed in civil proceedings, there is a First Amendment public right of access to the Second Amended Complaint. Defendants have not demonstrated any overriding interest essential to preserve higher values.

individuals or groups. That is not an adequate reason to seal that information once it becomes part of a judicial record. *See Brokop ex rel. Brokop Living Tr. v. Farmland Partners Inc.*, No. 18-CV-02104, 2021 WL 9206333, at *1 (D. Colo. Dec. 16, 2021) (commenting that a "generalized allusion to confidential information is insufficient" to justify sealing (internal quotation marks and brackets omitted)); *United States v. Apperson*, 642 Fed. App'x 892, 900 (10th Cir. 2016) ("lest the common-law presumption of access be rendered a dead letter as to this class of cases, courts cannot justify denying disclosure by endorsing such generalized governmental interests [and] must analyze the government's interests in the context of the specific case—with respect to particular documents or categories of documents—and explicitly undergird their conclusions with fact-specific analysis"); *Motley v. City of Fresno*, No. 1:15-CV-00905, 2016 WL 1060144, at *2 (E.D. Cal. Mar. 17, 2016) (unsealing police department's operational policy documents submitted to support dispositive motion and holding that generalized concerns that disclosure would "somehow allow criminals to evade law enforcement and inflict harm on the public" did not meet compelling-reasons standard). !

Among the important public goals served by the common-law right are "bolstering public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, allowing the public to keep a watchful eye on the workings of public agencies, and providing a measure of accountability to the public at large." *In re Bair*, 9 F.4th at 791 (quoting *IDT Corp.*, 709 F.3d at 1222). Here, the information at issue is about Plaintiff, who does not contend that it is private. It does not relate to any ongoing criminal investigation, discuss surveillance, or describe law enforcement techniques. It was created and maintained by public entities so that their employees could make (ostensibly) more informed decisions about how to interact with the public. This is not a situation, like *IDT Corp.*, that involves litigation

amongst a group of competing corporations. To the contrary, where litigation is against a governmental body ultimately accountable to the public, the public interest is magnified. Given that strong public interest, Defendants have failed to carry their burden of showing compelling reasons for continued sealing that can overcome the presumption in favor of public access to a judicial record.

## II. *Neither law-enforcement privilege nor state law apply.*

Summarizing a witness's affidavit from a case involving law-enforcement privilege, Defendants advise that the information in the Second Amended Complaint could "arm[] subjects with knowledge of the kind and quality of intelligence available to officers who they may encounter, allow subjects to alter their behavior to evade detection, take additional precautions, anticipate law enforcement activity and [] ultimately place officers and the general public at greater risk." (ECF No. 64 at 5, citing *Raz v. Mueller*, 389 F. Supp. 2d 1057, 1061 (W.D. Ark. 2005).) But unlike in *Raz* they provide no explanation of how any of those risks apply to this case or could be caused by unsealing the unredacted Second Amended Complaint.

In raising that generalized parade of horribles, Defendants conflate two issues. Their overall interest in the confidentiality of the subpoenaed records (though itself overbroad) is not relevant. Whether discovery documents were appropriately designated as confidential pursuant to a protective order is an "entirely different" question than whether a judicial record should be sealed. *Kempf v. Hennepin Cnty.*, No. 18-CV-1367, 2020 WL 12990220, at *2 (D. Minn. June 17, 2020) ("a protective order is entirely different than an order to seal or redact Court documents and implicates entirely different interests"); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 307 (6th Cir. 2016) (remarking that the sealing standard is "vastly more demanding" than the protective-order standard). What is at issue here is the narrower

5

question of the public right of access to the information that is now part of a judicial record.[3] *See* L.R. 13.05(A)(3). Defendants have not sufficiently supported their request for prolonged sealing.

In addition, Missouri Revised Statute § 576.050 is a distraction. There is nothing in the statute that suggests that a prosecutor would characterize the disclosure of information from MULES in order to comply with the Federal Rules of Civil Procedure—something required by federal law and, in any event, undertaken as part of an employee's official duties—as the "misuse of official information." It simply does not apply to the Court here.

Finally, law-enforcement privilege is itself a red herring. Defendants rely on *Raz*, 389 F. Supp. 2d at 1061, for its description of the purpose underlying law-enforcement privilege: preventing disclosure of law-enforcement techniques; protecting people involved in an investigation like sources, witnesses, and officers; and preventing interference in an investigation. They do not explain how those generalized interests apply here, where there is no ongoing investigation, no investigative participants to protect, and no information at issue that describes anyone other than Plaintiff. The sealed paragraphs do not say anything about the tactics or operations of any law enforcement agency—indeed, that is part of the constitutional problem.[4] Defendants do not (and could not) explain how the information contained therein could "educate criminals regarding how to protect themselves against police surveillance" or "hamper future law enforcement efforts by enabling adversaries of law enforcement to evade detection." *United States v. Hoeffener*, No. 4:16-CR-00374 JAR/PLC, 2017 WL 3676141, at *18 (E.D. Mo. Aug.

---

[3] Defendants imply the information in the judicial record originates from REJIS, but that is incorrect. REJIS, MULES, and NCIC are separate databases. *See Merriweather v. State*, 294 S.W.3d 52, 57 (Mo. 2009) (en banc) (vacating conviction where state did not make diligent effort to locate criminal history of alleged victim by searching REJIS but not MULES and NCIC).

[4] To avoid having to move to seal portions of this brief, Plaintiff alludes only vaguely to the constitutional deficiencies with the maintenance and use of the information at issue. Should the Court wish to entertain additional argument on this point, Plaintiff respectfully moves to file a sur-reply.

25, 2017) (internal quotation marks omitted)). Nothing in the redacted information discusses law enforcement surveillance or detection of criminal activity.

The ultimate issue is therefore whether the four paragraphs in the Second Amended Complaint are so secret that "compelling reasons" justify their non-disclosure. The answer is no. The contents of individual records maintained in criminal-history databases—federal, state, and local—are routinely used and disclosed in court proceedings. *See, e.g.*, *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1209–10 (10th Cir. 2006) (discussing what NCIC database said about an individual defendant and how that information came to be placed in her file); *United States v. Urbina-Mejia*, 450 F.3d 838, 839 (8th Cir. 2006) (same and discussing reliability of NCIC reports); *United States v. Puckett*, No. 6:21-CR-03108 BCW, 2022 WL 9497227, at *2 (W.D. Mo. Oct. 14, 2022) (describing officer's testimony about what MULES showed him concerning individual defendant's criminal history); *State v. Nowicki*, --- S.W.3d ---, 2023 WL 1786654, at *6 (Mo. Ct. App. Feb. 7, 2023) (describing State's admission into evidence of MULES records about criminal defendant); *see also generally Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022) (discussing at length how St. Louis County and its officers use a particular feature of its criminal-history databases). Taken alongside the reality that the State often relies on criminal-history records to prove an individual has committed a certain crime, Defendants' position embraces one-sided accountability: taking for granted that the government routinely makes individual criminal-history information part of the public court record but denying individual litigants that same right.

Because the common-law and First Amendment rights of public access apply and Defendants have not shown any reason, much less a compelling reason, that would overcome those rights, the unredacted Second Amended Complaint should be unsealed.

Respectfully submitted,

/s/ Jessie Steffan
Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, MO 63101
314-652-3114
jsteffan@aclu-mo.org
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically and served by operation of the CM/ECF system on all counsel of record on February 8, 2023.

/s/ Jessie Steffan